### RUFFl, Plaintiff-Appellant, v. AMERICAN FLY AWAY SERVICE, INC., Defendant-Appellee.

Ohio Appeals, Second District, Montgomery County.

No. 2113. Decided December 15, 1950.

Vradelis, McCray & McCray, Dayton, for plaintiff-appellant.
Pickrel, Schaeffer & Ebeling, Dayton, for defendant-appellee.

## OPINION

By MILLER, PJ:

This is a law appeal from the judgment of the Court of Common Pleas denying the plaintiff-appellant the right to participate in the Workmen's Compensation Fund. At the close of all of the evidence the defendant moved for an instructed verdict for the defendant for the following reasons:

1. The plaintiff's decedent was not an employee as defined in the Workmen's Compensation Act.

2. The plaintiff's decedent was not killed in the course of his employment, if he was an employee.

The court sustained the motion on each of the grounds set forth and a judgment was rendered on the verdict. The appellant urges that the record presented issues of fact which should have been submitted to the jury for its determination.

The record discloses that the defendant, The American Fly Away Service, Inc., was engaged in the business of ferrying small airplanes from the place of manufacture to various places of distribution and sale located throughout the United States on the date on which the plaintiff's decedent was killed; that the defendant's business had been in operation for several years; that it was quite extensive, at times having as many as fifty pilots engaged in this service. The decedent was one of the pilots and at the time of his death was making delivery of an airplane for the defendant.

The record discloses that on June 5, 1946, the plaintiff's decedent and the defendant entered into a written agreement containing the following provisions pertinent to the issues here presented: The parties to the contract will be referred to as "pilot" and "defendant."

Item 1. The pilot agreed to fly new or used aircraft to various locations throughout the United States.

2. Pilot to be paid compensation in advance.

3. * * *

4. All expenses incurred by the pilot as the result of delays to be borne by the pilot unless it exceeded two days through no fault of his own, in which event the expenses beyond the two days would be paid by the defendant.

5. Pilot shall pay all of his traveling expenses and shall have exclusive right to determine the mode of his transportation, routes, etc.

6. The pilot was to be the sole judge of the route to fly and under what weather conditions he would fly, but it was specifically agreed that the pilot would abide by the rules and regulations prescribed by competent authorities; that all methods and means of delivery shall be determined by the pilot who was to be responsible to the defendant for the results.

7. The pilot was to furnish all necessary equipment such as navigation maps, charts, etc.

8. The pilot agreed to operate each and every aircraft in accordance with the manufacturer's recommendation.

9. The pilot agreed to furnish all gas and oil necessary to be used and to be responsible for having the aircraft properly tied down or hangared at night and to bear all necessary expenses for this.

10. If grounded for any reason the pilot agreed to remain with the aircraft at his own expense until a representative of the defendant arrived. In case that he stopped over night the pilot agreed to wire his location and his expected future itinerary to the defendant at his own expense.

11. The pilot was not compelled to accept any aircraft offered to him, having the right to refuse the same without stating the cause.

12. The pilot agreed to incur no expense on the defendant without advance authorization.

13. * * *

14. * * *

15. The pilot reserved the right to work when he pleased and to engage in other occupations of his choice, such as flight instruction, etc.

16. * * *

17. The pilot agreed that when he accepted an aircraft for delivery he would do so as soon as possible and that he would not at any time or under any circumstances use the aircraft for any purpose whatsoever not absolutely necessary for the delivery of said aircraft.

18. The pilot agreed to be responsible for his own acts, being an independent contractor, and would not be protected under the policy of insurance carried by the defendant.

19. The pilot agreed to reimburse the defendant for damage to any aircraft in amounts not covered by the defendant's policies of insurance.

20. * * *

21. The pilot agreed not to carry passengers at any time except when requested to do so by the defendant and when so requested he was to be paid additional compensation.

22. * * *

23. * * *

The record discloses further than on July 23, 1946, the date of the fatal accident, the plaintiff's decedent piloted an airplane from Middletown, Ohio, to Washington, D. C., under the said contract. At approximately 3:30 P.- M. the same day he was assigned another airplane to fly from Washington, D. C., to Chicago, Illinois. While flying near Deep Creek Lake, Maryland, he swerved approximately half a mile off of his course in order to fly low or buzz a fishing boat on the lake. His plane was the lead plane followed by two others. He signalled them to buzz the fishing boat with him, which they did. However, the decedent decided to return and buzz the boat again, which he did, but this time he went too low and struck a cable, which caused him to lose control of his airplane, resulting in his death.

The evidence discloses that upon the delivery of an airplane the decedent was directed to pick up a release and receipt which released the defendant from liability and he was also directed by defendant to pick up payment for the delivery charge, which was to be returned to the defendant.

The evidence offered was sufficient to make the defendant amenable to the act provided the deceased was an employee acting within the scope of his employment. The compensation law does not apply where the injured person is an independent contractor and the relation of employer and employee does not exist. **Industrial Commission v. McAdow, 126 Oh St 198.** Whether one is an independent contractor or an employee depends upon the facts of each case.

In **Gillum v. Industrial Commission, 141 Oh St 373,** syllabus 2 in part provides:

"* * * The principal test applied to determine the character of the arrangement is that if the employer reserves the right to control the manner or means of doing the work, the relation created is that of master and servant, while if the manner or means of doing the work or job is left to one who is responsible to the employer only for the result, an independent contractor relationship is thereby created."

It is our conclusion that there was no evidence presented to show that the defendant herein reserved the right to control the manner or means of doing the work herein; that all the evidence clearly showed that the pilot was to be responsible to the employer only for the result and that therefore an independent contractor relationship existed.

We shall next consider the question whether or not the plaintiff's decedent, if he were an employee, was acting within the scope of his employment at the time he met his untimely death. The appellant urges that the hazard of monotony while flying an airplane is a hazard that has a causal relationship or connection with the accident. We concede that monotony may be such a hazard, and injuries resulting therefrom would be compensable, but here we have a different situation. The plaintiff's decedent deliberately departed from his course and dove his plane down to the lake, not only on one occasion, but a second time, which resulted in his death.

We think that this was clearly a departure from the scope of employment. In order to be compensable the injury must have been received while the employee was engaged in the promotion of the employer's business and in the furtherance of his affairs. **Industrial Commission of Ohio v. Bateman, 126 Oh St 279. Georgejakakis v. Wheeling Steel Corporation, 151 Oh St 458.** The appellant cites the cause of **Laudato v. Hunkin-Conkey Construction Company, 135 Oh St 127,** but we think this case is distinguishable on the facts from the case at bar. In the cited case the employee's duties required him to ascend to an upper floor and then to descend to the ground floor in the performance of his duties of unloading certain debris for his employer. While performing such duties he was injured. In the case at bar the plaintiff's decedent was not under contract or required to descend from a high altitude to a low altitude in order to see how close he could come to a fishing boat on the surface of the lake. He was under contract to fly a plane on as direct a route as possible and at an altitude commensurate with terrain and weather conditions, and there is nothing in the record to indicate that these conditions caused him to descend in the manner which he did. We think the court ruled properly in sustaining the defendant's motion.

The second error assigned is that the court erred in overruling the plaintiff's motion to make the Industrial Commission of Ohio a party defendant. This motion, the record discloses, was not made until after the verdict had been rendered in favor of the defendant. It was therefore not seasonably made and the trial court did not err in its ruling.

The judgment will be affirmed.

HORNBECK and WISEMAN, JJ, concur.